Our next case on the call of the docket is agenda number seven, case number 113867. NRA, the denial of application for a firearm owner's identification card. Illinois Department of State Police v. Jerry W. Coram. Counsel for the appellant. Good morning, your honors. May it please the court, counsel. My name is Brett Lagner. I'm an assistant attorney general, and I represent the Illinois State Police in this matter. Your honors, petitioner challenged only section 922G9 of the Federal Gun Control Act as unconstitutional in response to the State Police's motion to vacate the circuit court's order requiring it to issue a FOID card to petitioner. Petitioner has not challenged Illinois law or otherwise challenged the application of Illinois law to him. Your honors, this court should reverse the circuit court's determination for three reasons. First, the Seventh Circuit in its en banc decision in Skoyan held that this very same statute survived a facial constitutional attack under the Second Amendment. Second, plaintiff has not even sought a pardon. Therefore, plaintiff has not exhausted all of the routes to removal of the disqualifying conviction. He should not be heard to complain of the bar imposed on him by section 922G9 until we in fact know that it is a bar. Until that point, a constitutional decision is not appropriate. And third, the Constitution tolerates over-inclusiveness in the categorical prohibition and does not require a case-by-case determination. So a claim that the statute is unconstitutional simply because the petitioner himself has not been a recidivist is not or must fail. Before I turn to my first point, your honor, I'd like to alert this court to amendments to the Illinois FOID Act that went into effect in January 2013. And I'll also be submitting a motion to this court for leave to cite this as supplemental authority. But in January, certain language in the Illinois FOID Act was amended and pertinent here, sections 10B and 10C4, which is a new section, 10C4, now have language that specify that a circuit court may not order the state police to issue a FOID card if the petitioner is barred by federal law from having a gun. So the court clarified that the 922G9 bar prevents, or I'm sorry, the General Assembly clarified that the 922G9 bar prevents the exact order that the circuit court entered in this case. Turning to my first point, your honor, the Seventh Circuit in Esquoy had upheld 922G9 against a facial challenge. This court has explained while federal court decisions interpreting federal law are not controlling, they are nonetheless given considerable weight. That is especially true for cases in the Seventh Circuit because this court has recognized the need for uniformity in application of federal laws in the state and federal courts within Illinois. The decision to be given considerable weight in this case, Esquoy, in which the en banc panel upheld under heightened scrutiny the 922G9 ban. First, the Seventh Circuit found that the statute served an important goal, and that goal is reducing armed violence. Second, the court found that logic and data supported the link, a sufficient link under heightened scrutiny between the bar and that goal. And the logic and data supported, one, the finding that guns are uniquely dangerous in domestic violence scenarios. Two, domestic violence or domestic battery is chronically undercharged by prosecutors because of problems with witnesses testifying, getting witnesses to not drop charges, getting witnesses to come to court. That's a problem unique to the domestic violence situation, as Senator Lautenberg explained, and section 922G9 is often called the Lautenberg Amendment in recognition of Senator Lautenberg's efforts to close a loophole that allowed domestic batterers to still obtain guns because they're only being charged with misdemeanors when in any other context they would be charged with felonies. And three, domestic batterers have a high recidivism rate. So the court found that the statistics in peer-reviewed studies supported the notion that domestic batterers have a reasonably high likelihood of committing their past violence. If they use guns in their domestic violence, the chance of a homicide increase multifold. Mr. Legner, is there any problem created where if you have someone incarcerated for the same offense, you have a better chance of getting to own a gun than if you get probation? I understand your argument on the fact that they haven't sought a pardon here, but just pushing that aside for a minute. Pushing that aside, Your Honor, no. And there are five points in response to that question. First, the issue of the restoration of civil rights under Illinois and the incarceration versus non-incarceration question is a function of Illinois law. It's not a problem with the federal law, and the federal law is all that's challenged here. Two, it is reasonable to conclude that someone who is incarcerated is either, who actually goes to jail as a result of his conduct, is a reasonable person who is affected by the deterrent effect of going to jail or otherwise is subject to the rehabilitative purposes of the jail term. So in other words, the individual that goes to jail and pays that debt in that way is subject to certain deterrent and rehabilitative measures that somebody who never goes to jail is not. The principle of undercharging logically extends to the principle of sentencing. There's no doubt, and the evidence is exorbitant, that these types of crimes are under charge. So prosecutors often have to charge a misdemeanor instead of a felony. Along those lines, the reason for that is that the witnesses may not want to cooperate. Largely because they are intimidated by the person who has inflicted the violence upon them. Not only would prosecutors may reasonably decide to bring this down to a misdemeanor, but they also may decide, well, even if we go to a trial on a misdemeanor, this witness may be uncooperative and difficult. And so I'll try to get a plea in which I recommend a conditional discharge. In other words, no jail time. To at least get something. So it's not necessarily the case that the worst offenders, unique to the domestic violence situation, it's not necessarily the case that the worst offenders are the ones that go to jail. And the ones who do not are the less bad offenders. It certainly may be the case that the ones who are more successful in intimidating their victims are the ones who don't go to jail. Because those are the situations where you have the most uncooperative witnesses and the most pressure on prosecutors to charge down as well as to offer a plea with a non-jail term recommendation for the sentence. But it is clear, excuse me, it is clear that the person who gets the more severe penalty would be perhaps eligible to have a right restored and then could get a FOIA card. That is correct. Okay. The federal cases seem to say that rights restored has some meaning as opposed to a right restored. I think in our case the only right would have been the right to vote. And whether that's sufficient or not. We're looking at a federal law and the federal cases seem to say we understand there will be some anomalies created because of differences in the way states treat this. Can this court look at the Illinois law and say a right that is retained is similar to a right that is restored under Illinois law? The right retained versus the right restored is an interpretation of the federal statutory language. So the question isn't a matter of Illinois law, the question is whether it's taken away. For the purposes of interpreting the federal statute which has the rights restored language. Are we bound by that language? By the federal court's interpretation of that language. This court is not bound by it, but it gives considerable weight to those interpretations. With regard to evidence, what evidence is there with regard to the conviction for domestic battery when you're looking at the federal definition? Are all the elements of the federal definition met by the offense charged against Coram? Yes. And there's been no suggestion that it hasn't. But it was a crime that involved actual violence against somebody with whom he was cohabitating. And again, there's been no suggestion that this doesn't meet the 922G9 definition, but it does in fact meet the 922G9 definition. There's no doubt that you are urging an intermediate scrutiny? Correct. The federal courts are pretty unanimous at this point that a degree of heightened scrutiny that falls short of strict scrutiny applies. And so it's an intermediate level. What Scoia and other Seventh Circuit cases have said, you need a strong showing and a reasonable fit between the prohibition on firearm possession and the important government goal. And Scoia specifically found that this statute satisfies that level of scrutiny. But turning back to the disparity that Justice Thomas, that you raised, and continuing along the same lines, and as Justice Carmichael, you pointed out, the federal courts have recognized that the federal law allows certain anomalies to be created. They recognize that with the rights restored language, there will be situations from state to state and within one state, as was the case in Logan, within one state where people who are incarcerated and lose rights and then are released and get those back will have their disqualification removed, whereas those who never are incarcerated don't. They never have rights restored. But the court in Logan found no problem with that. And the Seventh Circuit in Scoia imported that specific line of reasoning, acknowledging the anomaly, but finding no problem with that in the 922G analysis. These anomalies are permissible. These anomalies are permissible under Logan and Scoia. And as I said, for the reasons explained above, it's reasonable to think that those who are incarcerated are not necessarily in this specific context, the more violent or the worst offenders, as well as those that are incarcerated face the deterrent effects of incarceration more clearly, as well as are subject to the rehabilitative purposes. A right restored or a rights restored has no effect on the conviction. Under Illinois law, there is nothing that has to be done to have a right restored. Release from prison, release from jail does it. Is that not correct? It happens automatically, yes. So what relevance does that have to the aspect of the dangerousness or future dangerousness of an individual with regard to possessing a firearm? The fact that rights are restored when it automatically happens? The fact that it automatically happens, you're correct, shows that it's not done on a case-by-case determination. That's true. Except where the exception says, except where they are prohibited, I think, from possessing. Yes, exactly. So that contemplates some type of a hearing or some type of a restriction, which apparently is not provided for in Illinois law. It is not provided for in Illinois law. And in fact, Illinois law, for instance, could amend, the General Assembly could amend the statute to say when you are released, your rights are restored, other than your right to possess a firearm, and some states do specifically provide for that. But if Cora wants a case-by-case determination, again, he has that option, and that is in seeking a pardon. Under Illinois law, and this is under Section 921A.33b of the federal law, receiving a pardon is one of the ways to relieve yourself of the disqualifying conviction. Illinois law provides for wide latitude in applying for clemency. The party cited the Illinois authority, which leads, which shows this court, or directs this court, to the process in Illinois for applying for clemency. Essentially, one can go online, download the petition, clemency petition, fill it out, and send it in. At which point, it is, each case, each petition is reviewed by the Illinois Prisoner Review Board, which then submits its file to the governor for review. Now, without any statistics or any analysis, quorum suggests that, well, pardon is not a reasonable route to restoration of my rights. But again, there are no, there's no support, there's no statistical support for that assertion. Instead, the facts suggest the contrary. As of last November, Governor Quinn had ruled on 2,237 clemency petitions and granted pardons in 842 of those. So that's over a 33% grant rate on pardons. It does not suggest that applying for a pardon is a fool's errand. And again, the point of that is, if quorum really believes that he is rehabilitated, if he believes that he should be relieved of the burden of this bar, then the federal law and Illinois law, then the interplay between the two, provide a route for that. He may seek a pardon, but until he's done so, but until he's done so, we don't know if the 922 G9 bar really is a bar to him. And until he's done so, it's not proper to issue a ruling on the constitutionality of a statute under the constitutional avoidance doctrine. My third point, Your Honor, my third broad point, is that petitioners as applied challenge must fail, also, if they fail to meet the requirements of the statute, also, because there need not be a perfect fit in this case. The Supreme Court, U.S. Supreme Court, in Heller and McDonald, both acknowledged that certain categorical prohibitions on the possession of guns are presumptively valid. The federal courts have found that 922 G9 is one of those presumptively valid prohibitions. No federal court has found to the contrary, and many federal courts have addressed the issue. And these cases are cited in the state police's brief. The fact that these categorical prohibitions are presumptively valid, and that we are applying an intermediate level of scrutiny, shows that the fit need not be perfect, that some over-inclusiveness is permitted. It cannot be the case that in a situation where the fit need not be perfect, an over-inclusiveness is permitted. If over-inclusiveness is permitted, that everybody who is under the umbrella of over-inclusiveness has a constitutional claim. Because that would be tantamount to saying the fit must be perfect, and you cannot rope in anybody who is not ultimately recidivist. Additionally, as Scoyin explained, reading Heller's language, the Constitution does not require a case-by-case determination in whether to extend the prohibition on gun possession to somebody. As long as there is a reasonable basis for the category, and there is in this case, that is adequate. The petitioner has a domestic violent conviction. There is a high rate of recidivism for domestic batterers. The government has a significant interest in stopping armed violence, specifically in the home, and guns in that situation is an exception. This is similar to a situation of a speeder driving over 55 miles an hour. The 55-mile-an-hour speed limit is for the purposes of traffic safety. A person who has speeded and is pulled over, but hasn't caused any accident, can't claim that the 55-mile-an-hour speed limit is unconstitutional as applied to them, simply because they haven't caused an accident. Similarly here, Quorum has a conviction for domestic abuse. He cannot claim that since that time, a bar on his possessing handguns is unconstitutional applied to him, simply because he has not been a recidivist yet. Where the category, the categorical prohibition is sound, these individual claims that I'm not in the category cannot succeed. If this Court has no further questions, the State Police urge this Court to reverse the decision of the Circuit Court and to uphold the constitutionality of Section 922G9 of the Federal Gun Control Act, just as every Federal Court to have addressed the issue has done. Thank you very much. Thank you. Good morning, and may it please the Court. My name is Renee Dunham Ingram, and I represent APALEE, Jerry W. Quorum. The broad classification scheme of 18 U.S.C. 922G9 and a hodgepodge of State and Federal law preclude Jerry Quorum for possessing a firearm, not only for the purpose of hunting, but, as indicated in the Record of Appeal, page 208, for the much more significant purpose of protecting his home. The trial court found that 922G9 was unconstitutional as applied to Jerry Quorum, and I will thus begin with Mr. Quorum's as-applied argument. History and virtually all courts limit the exercise of Second Amendment rights to law-abiding and qualified individuals. In the District of Columbia v. Heller, the Court stated that categorical prohibitions on firearms are presumptively constitutional. Note the Court didn't say conclusively constitutional. The Court said presumptively constitutional. A presumption can be rebutted. In order to rebut the Heller presumption and prevail on his as-applied challenge, Mr. Quorum must show that his factual circumstances take him out of the class covered by 922G9 and put him into that class of law-abiding individuals. According to the full... Can I ask just one real narrow question? Yes. I'm reading your conclusion page of your brief, and you say you have two arguments. The first one is that this section we're discussing here is unconstitutional as applied to Jerry W. Quorum. That's correct. Under what theory? Under the Second Amendment? Under the Second Amendment, yes. As a court. You're not raising any other kinds of arguments except Second Amendment rights? Second Amendment rights, correct. Okay? He has to put himself out of the class created by 922G9 to prevail, and he has to show that he is unconstitutional. He has to show that he is unconstitutional and put himself into that class of law-abiding citizens that the Second Amendment was entitled to cover. According to the Fourth Circuit in United States v. Elkins, he must show that his factual circumstances remove his challenge from the realm of ordinary challenges. Mr. Quorum has succeeded in doing just that. First, with the exception of the 20-year-old event in question, Mr. Quorum has led an exemplary life. Mr. Quorum is not a speeder. He's somebody who may have sped 20 years ago. Unlike most challengers to the Second Amendment limitations, Mr. Quorum did not bring this action for the purpose of fighting current criminal charges, which place him right back in that classification, or for the purpose of ameliorating enhanced sentencing, but rather he is merely trying to follow legal channels to legally obtain a foreign card to legally possess a firearm. Ms. Ingram? Yes. There's no question, as Mr. Legner said, that we're dealing with just an as-applied challenge, not on its face challenge, right? We're dealing with two, both as-applied and facial. And as the court order stated, Judge Ortbaugh found the as-applied challenge, I'm sorry, the facial challenge was governed by SCOAN and it was denied, but the as-applied challenge was separate, and that's what he ruled on. Right. And wouldn't Mr. Quorum, to fit within the as-applied challenge, have to at the very least seek a pardon? I don't believe so. There's no case or no statute that claims that's a prerequisite to seeking constitutional relief from 922G9. I have not seen that in any case law anywhere. Well, if he sought a pardon and received a pardon, we wouldn't be here, would we? No, we wouldn't. But in light of the political climate, I don't think so. In the governor's office, the overarching principle is who's going to win the next election and just what they must do to achieve that. In a court of law, the overarching principle is the Constitution and justice. It's quite different than the determination of a pardon. Here we worry about the Constitution and law, not public opinion. Do you have any further information, like statistics on rates of pardons? I mean, or anything to support the argument that it's not a viable path for him? I checked on this when I was doing the original brief for Mr. Quorum, and from what I read at that time, I found that Mr. Quorum, they were years behind on granting pardons. It takes them years to get to it. And as appellant has stated, 823 or something like that were granted. And there's years of backlog, according to what I found then. There's nothing presented in the record that was presented to the trial court? I don't believe so, no. Okay. In addition to the possibility of a pardon, which might say that, as Justice Thomas pointed out, had he gotten a pardon, you wouldn't be here, United States Code section 925C provides a framework for the attorney general grant relief. I understand that hasn't been funded since 1992. That's correct. But there is that possibility. Does that factor into our analysis? Not particularly, because the attorney general, the federal attorney general, would not govern this since it was state charges. The jurisdiction that convicts the defendant is the jurisdiction that has to issue the pardon, a restoration of rights. How do the amendments to section 10 affect this case? They absolutely do not. Another statute did state that a judge could not grant relief under 430 ILCS 6510 if it was a violation of federal law. They just added that language specifically to the statute. But what controls here, if you read the statute, it very clearly says that domestic battery misdemeanors can appeal to the trial court. It's in the plain language of the statute, on its face. And so, I mean, by the plain language, it appears that any domestic battery misdemeanor can apply to the court. But when coupled with federal law, the only ones that can get relief are the ones who have had this restoration of civil rights. So in other words, the plain language of the statute very clearly states that, yes, if you've been released from jail, you have your civil rights restored, you can go ahead and avail yourself of 430 ILCS 6510. If you were not convicted, you did not receive your civil rights, well, the federal law prevails. And in spite of that language, the domestic battery language in the statute, the person is convicted, or the person is deprived of FOIA card rights. Okay. Okay, we're going to get back to the as-applied distinction from Mr. Quorum. First, with the exception of the 20-year-old event in question, Mr. Quorum has led an exemplary life. Second, Mr. Quorum has undergone psychological evaluation by Dr. Frank Froman, a respected clinical psychologist in Quincy, Illinois. Dr. Froman has deemed that Mr. Quorum poses no danger either to himself or to others. Dr. Froman's mental status examination showed no psychological malady whatsoever, and Dr. Froman even stated in his report that Mr. Quorum exudes a significant sense of social responsibility and has positive relationships with others. Third and significantly, Adams County Circuit Court in Quincy held a hearing on May 10, 2010, pursuant to the previous version of 430 ILCS 6510. This was an appeal on the merits of the state police denial of Mr. Quorum's FOIA card application. The trial court found that Mr. Quorum was not dangerous and that the denial of the FOIA card rights did not serve the interests of substantial justice. Now, this trial court sits where Mr. Quorum has lived for years. This is the court that adjudicated Mr. Quorum's initial offense. A representative from the Adams County State's Attorney's Office was present at the hearing, and this was the very office that had prosecuted Mr. Quorum's case 20 years ago. The state's attorney was present and participated, and he had absolutely no objection to restoration of Mr. Quorum's firearms rights. Could we talk about some of the federal cases? I mean, the Logan case acknowledges that there will be anomalies, that there can be these broad categorical rules, and in some states they may play out one way, and in other states they may play out another way, but there's a national governmental interest that trumps all of that. Well, there's a distinction in the Logan case. First of all, it was not dealing with an enumerated individual constitutional right. Also, this case was decided pre-Heller. District of Columbia v. Heller was... Could you help me on that one? Why is that so significant? How does the Heller case fit into this other concept that comes out of Logan about the fact that Congress can create categories, and sometimes it will work in some states and sometimes it won't work in others? Heller has an impact upon this because prior to Heller, firearms were more or less a collective right. It was the right to own arms in a militia. In 2008, the Heller case made this an individual constitutional right, and that's what brought it to intermediate scrutiny. Logan and the other cases were decided under rational basis scrutiny. Moreover, Logan dealt more with congressional intent and plain language of a sentence-enhancing statute. It did not deal with the individual right to possess firearms. It was a different issue altogether. It was enhanced sentencing. Then can you explain how you think now, in this new post-Heller world, the issues that were presented in Logan would play out? I believe the courts are still hashing that one out. Most of these laws that govern firearms regulations were enacted prior to Heller, and I believe there's going to be a lot of activity sorting this all out now under intermediate scrutiny as opposed to the prior rational basis scrutiny that was applied. And as you know, rational basis scrutiny is basically anything goes. If it has a conceivable relationship to the government objective, it's fine. Intermediate scrutiny has a little bit higher standard. It must have a reasonable relationship to a substantial governmental goal. You are not saying that Heller in and of itself trumps this kind of statute and says this can't be done, putting a restriction on getting a firearm back after a conviction, or are you saying that? Okay, I'm not sure I understand your question, sir. Are you saying that since Heller, post-Heller, this law is clearly unconstitutional? As applied to jury quorum and on its face, yes. Okay. So you are also making a facial challenge, and I did want to bring you back to that. In your conclusion, in your brief, you do say that this is also a facial challenge based on the Second Amendment. Right. Making both arguments, but I wanted to present the as applied first. Okay. Okay. Appellant urges you to attach no importance to the trial court's ruling of May 10, 2010, but appellant fails to consider which entity has the best ability to determine whether Mr. Quorum's factual circumstances set him apart from others subject to 922G9. Who is the better judge of whether Mr. Quorum presented facts placed outside the scope of 922G9 and in the class of law-abiding individuals? Is it Congress? Is it the state police? No. It's the Adams County, Illinois, trial court that adjudicated the original offense. Its rulings should not be taken lightly. Contrary to claims of appellant, case law does not preclude the success of an appropriate as applied challenge, and it was these cases I was looking towards in regard to the pardon. Again, no case mentioned that a pardon was a prerequisite. An example of this is Schrader v. Holder. Like Quorum, the Schrader petitioner presented facts which made him different from others in the disqualifying class. Like Mr. Quorum, he had been law-abiding for years, and like Mr. Quorum, he had led an exemplary life. Mr. Schrader did not properly put before the court the issue of whether the disqualifying statute was unconstitutional, as specifically applied to him. Had he done so, stated the court, the Heller case might have dictated a different outcome. The Schrader court also stated that it would hesitate to find Schrader outside the class of law-abiding responsible citizens whose possession of firearms is protected by the Second Amendment. However, the court could not make findings to this effect because Schrader didn't present the issue. United States v. Scone also left this issue open. The Scone court stated that it would leave the door open to a successful as-applied challenge by a misdemeanant who had not violated the law for an extended period of time. Did the unbound court, however, resolve your facial challenge? I'm sorry? The Scone-Skane case resolved the facial challenge to the statute, correct? Not to my satisfaction. Well, let's discuss. Okay, absolutely. That seems to be what you're arguing in your brief, that you disagree with that case. I do, because as we see in this case, there's a crazy hodgepodge of laws, and these are governing an enumerated individual constitutional right. I mean, the laws are basically the product of a polygamous marriage of federal law with no less than 50 sets of differing state laws. And the Skane case, however you want to pronounce it, engaged this whole issue of Logan and adopts Logan and says, in the post-Heller world, we're still going to have anomalies and that's how it's going to work in a federalistic government. How do you get around, or do you have an argument where the unbound Seventh Circuit was incorrect in whether or not we need to follow it? I can't argue that facial challenges are disfavored. And I can't argue that there's a whole body of law against us on this. But I do want to bring to the Court's attention that this hodgepodge of federal and state law is governing a constitutional right, and moreover, it's governing dangerous weapons here. I mean, in one state, somebody who is licensed to carry a firearm can legally carry a firearm. If he tries that in the next state, he might find himself subject to a felony conviction which precludes firearms possessions forever. In our case, we see with 430 ILCS 6510, the more egregious the offense, the more likelihood the defendant is going to go to jail. The more likelihood he's going to go to jail, the more likelihood he's going to get his civil rights restored. And if he gets his civil rights restored, he falls right in the middle of 921A33B2 that rolls out the red carpet for him to avail himself of 430 ILCS 6510. That may all be so, Ms. Ingram, but in keeping with Justice Tice's line of questioning, there's a reason that you started with the as-applied challenge, right? All of the courts of appeal, federal courts of appeal, have found the statute to be facially constitutional, and as long as the federal court precedent is uniform and doesn't lack logic, as Justice Tice said, don't we have to follow it? That's correct, and you're absolutely correct. That's why I started with the as-applied challenge. All right. So short of it not being to your satisfaction, there's a problem finding the statute unconstitutional. There's a problem. There's a problem with finding it unconstitutional, but the thing of it is we have this hodgepodge of laws. We have anomalies such as the one we see in this case, and then we wonder why we have ineffective gun laws. It's so different from state to state, there's no rhyme or reason. And then we wonder why we have ineffective gun laws. So my purpose in the facial challenge was to bring it to this Court's attention. Speaking of the hodgepodge, if we should agree with you that he should be allowed to get a FOIA card, does that allow him to get a gun? Yes. Under the federal law, which prohibits it? I believe it does because I believe the ruling that that law would be unconstitutional as applied to him would be controlling, and I believe that the government would have to respect that, yes. So as applied to him, he could get a gun and no one else similarly situated in Illinois could. That's correct. That's the purpose of an as applied challenge. It's as applied to Mr. Quorum specifically. It would not apply to anybody else in Illinois. And interestingly enough, if you look at the case law that's provided by appellant, there have been a lot of as applied challenges brought, but not a single person has been able to present facts that distinguish him from the class that 922G9 creates. An example of this is Chapman, one of the cases in appellant's reply brief. The Chapman petitioner had an illicit gun to begin with. That's why he was in front of the Court in the first place. He had tried to commit suicide with this illicit gun, and moreover, he saw fit to try to shoot his ex-wife out the window with this illicit weapon. Then he tried to say that the statute didn't apply to him. And if you look at the cases carefully, you will find virtually all of the challengers to these limitations on firearms rights were either battling criminal charges or they were illegally in possession of a firearm. None of them were legally trying to get a gun. Mr. Legner alluded to an amendment effective January of this year. How does that play into our analysis, if at all? I do not believe it does, because what he's alluding to is they added the language that the circuit court could not direct the state police to issue a FOIA card if it was contrary to federal law. That was already more or less in play, because the federal law virtually precluded Mr. Quam from having a gun anyway. When they did the federal background check, he would have been precluded. He could have not obtained a gun. The only difference is that language said that the court couldn't issue such a ruling. However, we see the controlling issue here. The language domestic battery is in both versions of the statute. Absolutely both, on its face, plain. And it says that a domestic battery misdemeanor can bring such an action to the court. And it says that the court can issue the order to the state police if it doesn't violate federal law. Now, if the civil rights weren't restored as we have talked about previously to people who were released from jail, that domestic battery language in the statute is totally superfluous. If the person cannot get a FOIA card, cannot through the appeals process have the court direct the state police to issue the FOIA card, that domestic battery misdemeanor language in there shouldn't be there. Counsel, have you answered Justice Carmeier's question? I think so. A few quick points, Your Honor. First, again, it's important to keep in mind that plaintiff petitioner only challenges the federal law, the constitutionality of the federal law. There is no challenge to Illinois law or the application of Illinois law in this case. While petitioner claims that certain courts have entertained either as-applied challenges or entertained the possibility of as-applied challenges, it's important to note that those that have looked at as-applied challenges have all rejected them. No courts have actually found an as-applied challenge. Additionally, no court has undertaken the analysis, because potentially the argument wasn't pressed, but no court has undertaken the analysis concerning whether it would be inapt to consider an as-applied challenge where the point is the categorical fit need not be perfect and the constitution tolerates over-inclusiveness. That independently forecloses the as-applied challenge. Furthermore, in Skoyen, while the court did leave open the possibility of an as-applied challenge and engaged in no meaningful analysis of it, and the court said, whether a misdemeanant who has been law-abiding for an extended period of time must be allowed to carry guns again, even if he cannot satisfy 922A33B2 is a question that is not for this court. Even if he cannot satisfy 921A33B2, that includes all three routes to restoration, which includes the pardon, even if an individual cannot obtain the pardon. We don't know whether Petitioner cannot satisfy 921A33B2, because he hasn't tried. That is another independent reason to foreclose any as-applied challenge. With regard to Petitioner's efforts to distinguish Logan, Petitioner essentially makes two arguments. One, that it was not dealing with enumerated constitutional rights. That is incorrect. Logan concerned the application of the Armed Career Criminal Act. It concerned mandatory minimum sentencing, in other words, liberty interests, which certainly is an enumerated constitutional right, at least as weighty as the Second Amendment. Next of all, Skoyen, even if Logan was pre-Heller, there's no meaningful reason why its analysis, Logan's analysis, wouldn't apply, and in any case, Skoyen brought that language of Logan and the rationale of Logan into the post-Heller world in looking at this very statute. Skoyen held, in that regard, the justices held in Logan that this variability does not call into question federal firearms limits based on state convictions that have been left in place under the state's widely disparate approaches to restoring civil rights. Skoyen specifically brought the Logan adoption or acquiescence in the disparate treatment of different offenders under state law as not being a constitutional problem into this realm. The fact that individuals who are convicted for misdemeanor domestic battery who are incarcerated have their civil rights restored and those who aren't incarcerated don't is not of a constitutional dimension. Logan and Skoyen both explicitly stand for that proposition. The court has explained, the courts have explained that categorical prohibitions are presumptively constitutional. It's the category that is presumed to be constitutional, and there is no suggestion that the category is not, that that presumption has been rebutted simply because one individual stands up and says, I haven't been a recidivist. That is not necessary, that is not meaningful under an intermediate scrutiny, nor is it adequate under an as-applied challenge to relieve the petitioner of the effect of 922 G9. If this court has no further questions, the state police again reiterates its request that this court reverse the decision of the circuit court and uphold the constitutionality of 922 G9, both facially and as-applied. Thank you very much, Your Honors. Thank you, counsel, for your arguments. Case number 113867 N. Ray, the denial of application for a firearm owner's identification card by the Department of State Police v. Jerry Corum is taken under advisement as agenda number 7.